2024 IL App (1st) 231614-U

No. 1-23-1614

Order filed May 23, 2025

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 CR 9453 |
| | ) | |
| KIJEL GRANT, | ) | Honorable |
| | ) | Michele Pitman, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE NAVARRO delivered the judgment of the court.
Presiding Justice Mikva and Justice Mitchell concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We vacate the circuit court's order denying defendant's *pro se* motion seeking additional sentencing credit and remand for a hearing on the motion.

¶ 2    Defendant Kijel Grant appeals from the circuit court's denial of his *pro se* motion for an order *nunc pro tunc* seeking nine additional days of presentence custody credit. On appeal, he contends that the circuit court erred in denying the motion without holding a hearing. For the

following reasons, we vacate the circuit court's denial of defendant's motion and remand for a hearing pursuant to Supreme Court Rule 472 (eff. May 19, 2019).

¶ 3                                    I. BACKGROUND

¶ 4     Defendant asserts that he is entitled to additional presentence custody credit for time spent in custody in case number 21 CR 9453 when he was in simultaneous custody in case number 21 CR 4232. By leave of this court, he has supplemented the record on appeal with records from case number 21 CR 4232. We relate only those facts relevant to the issues on appeal.

¶ 5                              A. Case Number 21 CR 4232

¶ 6     On March 25, 2021, defendant was charged by indictment with three counts of aggravated unlawful use of a weapon (AUUW) in case number 21 CR 4232. He was arraigned on April 6, 2021. He thereafter posted bond and was placed on electronic monitoring (EM).

¶ 7     On May 21, 2021, defendant appeared before the circuit court in custody. The State sought leave to file a violation of bond based upon alleged EM violations in case numbers 21 CR 4416 and 21 CR 4232. The court then held a bond review hearing. Following that hearing, the court adjusted the bond amount in case number 21 CR 4416, instructed defendant that he needed to "post" an additional $8500 for that case, and noted that defendant remained on EM in both cases. The court's order states, "REMAIN IN CUSTODY," and "By Agreement; Defendant in Custody, Court Referral-Electronic Monitoring, Bond to Stand," and continued case number 21 CR 4232 until July 7, 2021.

¶ 8     In case number 21 CR 4232, defendant was convicted of one count of AUUW and sentenced to one year in prison. The mittimus, dated June 21, 2022, states that defendant received 496 days of presentence custody credit, and that the sentence in case number 21 CR 4232 would

be concurrent to the sentence in case number 21 CR 9453. The mittimus lists the date of arrest in case number 21 CR 4232 as February 11, 2021.

¶ 9                                B. Case Number 21 CR 9453

¶ 10    On July 15, 2021, defendant was charged by indictment with one count of aggravated discharge of a firearm and two counts of reckless discharge of a firearm in case number 21 CR 9453. The "INFORMATION INDICTMENT RETURN SHEET" and case summary list defendant's date of arrest as June 3, 2021.

¶ 11    On July 30, 2021, defendant appeared in person before the court for arraignment in case number 21 CR 9453. During the hearing, the State related that defendant was "currently out on bond" on two other cases. Defendant clarified that he was on EM. The court set a bond with GPS monitoring should defendant be released. The common law record indicates that defendant posted bond that day.

¶ 12    On October 14, 2021, defendant appeared before the court on bond in the case and related that he was in custody due to an EM violation in another, unspecified, case. On November 18, 2021, defendant again appeared before the court in custody on the other case. The court stated that defendant was "not getting any credit" while in custody on another matter, and that the bond in this case was not exonerated.

¶ 13    On January 13, 2022, defendant appeared before the court in custody. The court stated that defendant was custody on "something else" and defendant explained that he had "violations pending."

¶ 14    On February 10, 2022, defendant, who was in custody, appeared before the court and asked to have his bond exonerated. The court agreed and exonerated the bond.

¶ 15    On June 16, 2022, defense counsel stated that defendant had been in custody since February 10, 2022, when he surrendered his bond, and asked the court whether that was the date from which his presentence custody credit would be calculated. The court agreed that defendant had been in custody since February 10, 2022, and that he was on bond at the arraignment. The court declined to give defendant presentence credit for time when defendant was in custody on another case.

¶ 16    The parties then told the court that defendant would plead guilty to one count of aggravated discharge of a firearm in exchange for a four-year sentence. Defense counsel informed the court that defendant requested 491 days of presentence custody credit because he was arrested in a different case on February 11, 2021. The court declined because defendant was not in custody for 491 days in case number 21 CR 9453.

¶ 17    The "TIME CREDIT ORDER" credits defendant with 127 days of presentence custody credit, from February 10, 2022, through June 16, 2022. The mittimus lists defendant's arrest date in case number 21 CR 9453 as June 3, 2021.

¶ 18                    C. Post-Sentencing Motion

¶ 19    On June 30, 2023, the instant *pro se* motion for an order *nunc pro tunc* in case number 21 CR 9453 was filed in the circuit court. This motion sought 136 days' credit as time served.

¶ 20    In an attached affidavit, defendant averred that he was incarcerated between May 9, 2021, and June 12, 2021, and that during his incarceration, he was "booked for a weapons charge" in case "#21 CR." Defendant further averred that on June 3, 2021, he was fingerprinted and "charged/indicted" in case number 21 CR 9453, and he was released from jail on June 12, 2021. He finally averred that he did not receive presentence custody credit for the nine days between

June 3 and June 12, 2021, noting that the mittimus listed his date of arrest as June 3, 2021, but the "calculation sheet" listed his date of arrest as February 9, 2022.

¶ 21    On August 1, 2023, the court denied the motion.

¶ 22                                II. ANALYSIS

¶ 23    On appeal, defendant contends that the circuit court erred when it denied the *pro se* motion for an order *nunc pro tunc* without holding a hearing to determine the amount of presentence custody credit to which he was entitled for the time spent in simultaneous custody in case numbers 21 CR 9453 and 21 CR 4232, prior to his July 30, 2021, arraignment in case number 21 CR 9453.

¶ 24    Generally, a trial court loses jurisdiction to hear a cause after the expiration of the 30-day period following the entry of a final judgment. *People v. Bailey*, 2014 IL 115459, ¶ 8. However, Supreme Court Rule 472(a)(3) (eff. May 17, 2019) authorizes a trial court, at any time after judgment and after notice to the parties, to correct "[e]rrors in the calculation of presentence custody credit."

¶ 25    The State contends that defendant's motion for an order *nunc pro tunc* was not the correct "vehicle" for the relief defendant seeks. It points out that *nunc pro tunc* orders are intended to correct clerical errors evident from the record (see *People v. Melchor*, 226 Ill. 2d 24, 32-33 (2007)), and that defendant's request for additional sentencing credit is based on his recollections rather than the record. Defendant argues that his filing a "Motion for Order *Nunc Pro Tunc*" rather than a motion under Rule 472 has no bearing on his argument as it is clear from the motion that he seeks additional sentencing credit.

¶ 26    We agree with defendant. Even when a defendant does not reference Rule 472, a trial court retains jurisdiction to consider motions that, in substance, seek relief under that rule. See *People*

*v. Wells*, 2024 IL 129402, ¶¶ 9, 16 (the defendant's " 'Motion for Order *Nunc Pro Tunc*' " sought "to correct his mittimus to reflect credit that he believed he was entitled to"; its "substance" was "consistent with the remedy available in Rule 472"). Moreover, regardless of the title of defendant's *pro se* filing, the crux of the motion was a request for additional presentence custody credit. See *People v. Patrick*, 2011 IL 111666, ¶ 34 ("Generally, the character of a motion is determined by its content or substance, not by the label placed on it by the movant."). Thus, the substance of defendant's motion falls under Rule 472.

¶ 27    "Whether a defendant should receive presentence custody credit against his sentence is reviewed under the *de novo* standard of review." *People v. Jones*, 2015 IL App (4th) 130711, ¶ 12.

¶ 28    Here, defendant asserts that he was arrested in case number 21 CR 9453 on June 3, 2021, thereafter held in Cook County jail in simultaneous custody for case numbers 21 CR 9453 and 21 CR 4232, and released on June 12, 2021. He therefore concludes that he is entitled to an additional nine days of presentence custody credit.

¶ 29    Neither the common law record nor the report of proceedings establish that defendant was in custody for case number 21 CR 9453 between June 3, 2021, and June 12, 2021. Additionally, appellate counsel concedes that when counsel contacted the circuit court regarding any documents related to case number 21 CR 9453, dated between June 3, 2021, and June 12, 2021, counsel was told no such documents existed.

¶ 30    Defendant argues, however, that his assertion that he was in custody between June 3, 2021, and June 12, 2021, is "consistent" with records of case number 21 CR 4232, which establish that he was taken into custody on May 9, 2021, and was in custody on May 21, 2021. Defendant further notes that, in case number 21 CR 4232, he was " 'in custody' " for 496 days—from his arrest on

February 11, 2021, to his sentencing on June 21, 2022—which could mean that he was in custody for case number 21 CR 9453 during the same time period.

¶ 31    Defendant relies on no authority for the proposition that custody status in one case can be assumed to correspond to custody status in another case absent documentary evidence. Moreover, as defendant concedes, there are no documents in case number 21 CR 9453 dated between June 3, 2021, and June 12, 2021. "As the appellant, defendant had the burden to affirmatively establish the errors on review." *People v. Adams*, 2024 IL App (1st) 221474, ¶ 36. Here, defendant has not met that burden as to his claim that he was in custody in case number 21 CR 9452 between June 3, 2021, and June 12, 2021.

¶ 32    In the alternative, defendant argues that, "at the very least," he is entitled to presentence custody credit for June 3, 2021, the date of his alleged arrest in case number 21 CR 9453. The State concedes that, based upon circuit court records, the only day to which a "custodial hold" in case number 21 CR 9453 could be attributed is June 3, 2021.

¶ 33    Here, defendant's assertion that he was taken into custody in case number 21 CR 9453 on June 3, 2021, is supported by the case summary, the "INFORMATION INDICTMENT RETURN SHEET," and the mittimus, which list his date of arrest as June 3, 2021. Accordingly, if defendant were arrested in case number 21 CR 9453 on June 3, 2021, he would be entitled to presentence custody credit for that day. See *People v. Roberson*, 212 Ill. 2d 430, 439 (2004) ("once a defendant is arrested for an offense he or she is clearly 'in custody' for that offense even before he or she is formally charged").

¶ 34    We note that the State has attached numerous documents to its brief that are not included in the record on appeal, which the State asserts support the denial of the *pro se* motion for an order

*nunc pro tunc*. "However, attachments to briefs cannot be used to supplement the record, and this court cannot consider evidence that is not part of the record." *People v. Garcia*, 2017 IL App (1st) 133398, ¶ 35. In his reply brief, defendant contends these documents establish that he was released from custody on June 10, 2021, and further support his position that he is entitled to additional presentence custody credit.

¶ 35    While this court may take judicial notice of circuit court records (see *In re N.G.*, 2018 IL 121939, ¶ 32), considering defendant's assertion that the documents attached to the State's brief support his argument that he is entitled to additional presentence custody credit and the fact that it is unclear whether these documents were presented to the circuit court, the best course of action is to remand this cause for a hearing pursuant to Rule 472 where the court may consider all evidence relevant to defendant's claim and determine whether he is entitled to additional presentence custody credit.

¶ 36                                III. CONCLUSION

¶ 37    For the foregoing reasons, the judgment of the circuit court of Cook County is vacated and the cause is remanded for a hearing pursuant to Rule 472.

¶ 38    Vacated; remanded.